ORIGINAL

1 PATRICK BALDWIN, ESQ. (SBN 93337)
CHRISTOPHER P. MADER, ESQ. (SBN 199605)
2 BALDWIN LAW GROUP
3 530 Oak Grove Avenue, Suite 207
Menlo Park, CA 94025
4 Phone: (650) 326-8195
Facsimile: (650) 326-0467
5 E-Mail: cmader@baldwinlawgroup.com
*Attorneys for Plaintiff Cole Hamels, Individually and as Trustee of The Cole Hamels Living Trust*
6 *U/A DTD 12/31/2006*

FILED
OCT 2 4 2013
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

7                    **UNITED STATES BANKRUPTCY COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9                         **LOS ANGELES DIVISION**

10

11 In re:                                    ) **CASE NO.: 13-BK-29197-BB**
                                             )
12 CHRISTOPHER J. TUROCI,                    ) Chapter 7
                                             )
13         Debtor,                           ) Adversary Proceeding No.
                                             )
14 ─────────────────────────────            )
                                             ) **COMPLAINT TO DETERMINE**
15 COLE HAMELS, INDIVIDUALLY AND AS          ) **DISCHARGEABILITY AND IN**
   TRUSTEE OF THE COLE HAMELS                ) **OBJECTION TO DISCHARGE**
16 LIVING TRUST U/A DTD 12/31/2006,          )
                                             ) [11 U.S.C. §§523(a)(2)(A), 523(a)(4),
17         Plaintiff,                        ) 523(a)(6), 523(a)(19), 727(a)(2)(A), 727(a)(3),
                                             ) 727(a)(4)(A) and 727(a)(5)]
18         v.                                )
                                             )
19 CHRISTOPHER J. TUROCI,                    )
                                             )
20         Defendant.                        )
                                             )
21                                           )
                                             )
22 ─────────────────────────────

23         **COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY**
           **AND OBJECTING TO DEBTOR'S DISCHARGE PURSUANT TO**
24         **SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE**

25

26         Plaintiff-Creditor Cole Hamels, Individually and as Trustee of The Cole Hamels Living

27 Trust U/A DTD 12/31/2006 ("Plaintiff"), as and for his Complaint against Defendant-Debtor

28 Christopher J. Turoci ("Defendant"), respectfully alleges:

                                    COMPLAINT
                                       - 1 -

## JURISDICTION

1.      On July 30, 2013, Defendant filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California.

2.      On August 28, 2013, the Defendant's duly-noticed meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting") was continued to September 19, 2013, and then continued again to October 3, 2013.   On October 3, 2013, the Defendant failed to appear for the continued Section 341 Meeting, which was again continued to October 10, 2013, at which time the Section 341 Meeting was held.

3.      As of the date of this Complaint the Defendant has not been granted a discharge.

4.      This Complaint is timely because the date by which a Complaint objecting to the Defendant's discharge or to determine dischargeability of a debt expires on October 28, 2013.

5.      This is an adversary proceeding in which the Plaintiff is objecting to the Defendant's discharge under Bankruptcy Code §§727(a)(2)(A), 727(a)(3), 727(a)(4)(A) and 727(a)(5), and are seeking a determination as to the dischargeability of the debt owed by the Defendant to Plaintiff under Bankruptcy Code §§523(a)(2)(A), 523(a)(4), 523(a)(6) and 523(a)(19).

6.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 and Bankruptcy Code §§523 and 727.

7.      This case is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and 157(b)(2)(J).

## PARTIES

8.      Plaintiff Cole Hamels, Individually and as Trustee of The Cole Hamels Living Trust U/A DTD 12/31/2006 ("Plaintiff") is an individual, residing in Newton Square, Pennsylvania. Plaintiff is the Trustee of the Cole Hamels Living Trust U/A DTD 12/31/2006.

9.     Defendant Christopher J. Turoci is the Debtor in the above-captioned case. At all relevant times, Defendant was an individual residing in the City of Glendora, County of Los Angeles, California.

10.    Plaintiff is a creditor of the Defendant.

## FACTS

**A.    Plaintiff Was Solicited to Purchase Fraudulent Securities**

11.    The Defendant personally committed a fraud that resulted in injury to the Plaintiff.

12.    Plaintiff purchased securities which were used to operate a Ponzi Scheme. From 2007 through 2010, the Plaintiff "invested" a total of at least $779,954 in the following securities: (1) MKA Real Estate Opportunity Fund – $102,848; (2) Westmoore Lending Opportunity Fund, LLC – $100,000; (3) Sonata Multi-Manager Fund, LP – $100,959; (4) ChinaTel Group ("CHTL") – $8,850; (5) Westmoore Investment LP – $105,968; (6) Westmoore Holdings ("WSMO") – $7,500; (7) Rineon Group ("RIGI") – $205,093; and, (8) WLMG Holdings ("WHLX") – $148,736. Exhibit "A."

**B.    SEC Shuts Down Issuer of Fraudulent Securities**

13.    The Securities and Exchange Commission ("SEC") filed a Complaint against the issuer of the subject securities, Westmoore Securities, Inc. ("Westmoore"), United States District Court Case No. 8-10-CV-00849, styled *SEC v. Westmoore Management, LLC, et al.*

14.    The SEC termed Westmoore a "corporate shell" game. According to the SEC: (1) Westmoore raised more than $53 million by selling stock, promissory notes and other unregistered investments (the same "investments" sold to Plaintiff); (2) at no time did anyone disclose to Westmoore investors that their returns depended on Westmoore's receipt of funds from new investors to pay off earlier investors (a classic Ponzi Scheme) or the fact that Westmoore's principal and the other Westmoore control persons diverted investors' money for their own benefit.

C.    **CK Cooper – Successor in Interest to Issuer of Fraudulent Securities**

15.    In December 2008, Westmoore and CK Cooper & Co., Inc. ("CK Cooper," a Financial Industry Regulatory Authority ("FINRA") broker-dealer) negotiated a merger between the two companies. Westmoore agreed to invest $1,500,000 for a 25% ownership of CK Cooper. In July 2009, CK Cooper's Board of Directors approved the sale of shares of CK Cooper's parent corporation, C&K Capital Corporation[1], in exchange for the "equivalent value of $1,500,000."

16.    That same month, July 2009, Westmoore affiliate FYV Consulting, Inc. transferred 40,816 shares of Rineon ("RIGI") to CK Cooper's parent corporation for which the estimated value was $1,346,928. Additional shares of RIGI were transferred to CK Cooper's parent corporation by other Westmoore affiliates.

17.    That same month, July 2009, CK Cooper's parent corporation transferred 60,000 RIGI shares (with a reported share price of $27 and total value of $1,620,000) to CK Cooper. In March 2010, CK Cooper disclosed to the SEC that its "Additional Paid in Capital" increased from the previous year's filing by $1,620,000.

18.    Thereafter, Westmoore disclosed in several public statements that it consolidated with CK Cooper and at least one dozen Westmoore registered representatives transferred to CK Cooper. CK Cooper communicated in writing with Westmoore customers regarding their Westmoore investments.

/ / /

/ / /

---

1    C&K Capital is the sole shareholder and a control person of CK Cooper (as that term is defined by Section 20(a) of the Securities Exchange Act of 1934, 15 USC §78t(a). The individual owners and control persons of C&K Capital are the same individual control persons of CK Cooper. C&K Capital is synonymous with CK Cooper.

19.    Notably, Westmoore's principals and control persons – Matthew R. Jennings, Robert Lee Jennings II, Shawn Patrick Crawford and Steven R. Goodrich – were all affiliated with CK Cooper before forming Westmoore.

**D.    Defendant was the Managing Member of CK Cooper**

20.    Defendant was at all relevant times the Managing Member of CK Cooper.

21.    On November 14, 2011, Plaintiff filed an Arbitration Statement of Claim ("SOC") at FINRA, Case No.: 11-04295 (the "FINRA Arbitration").  A true and correct copy of the SOC is attached hereto as Exhibit "B," and incorporated herein.

22.    Plaintiff named Defendant as a Respondent in the SOC.  Defendant engaged in fraudulent conduct that resulted in injury to the Plaintiff, including but not limited to:

    a.    Plaintiff was knowingly manipulated and deceived into purchasing the Westmoore investments through misrepresentations and omissions.  Plaintiff was falsely told that Westmoore had a track record of success and that the offerings were good investments.  No one disclosed to Plaintiff that new investor funds (his funds) were used to pay existing investors and thus would not be used for the purposes represented to the Plaintiff.  Had the Plaintiff known the true facts, he would have never made the subject "investments," which in all events were sold through the use of untrue statements of material facts while also omitting material facts that would have made statements made not misleading.

    b.    Defendant was at all relevant times a control person of CK Cooper under California Corporations Code §25504.  Thus, Defendant is liable to Plaintiff to the extent CK Cooper is liable to Plaintiff.

    c.    Defendant (independently and through CK Cooper) is liable for the fraud related to the subject Westmoore securities as an active participant, conspirator and/or aider and abettor.

    d.    Defendant (independently and through CK Cooper) is liable for the fraud related to the subject Westmoore securities as the successor in interest to Westmoore.

    e.    Defendant (independently and through CK Cooper) is liable for the fraud related to the subject Westmoore securities as the alter ego of Westmoore.

    f.    Defendant (independently and through CK Cooper) is liable for the fraud related to the subject Westmoore securities under the fraudulent transfer doctrine.  CK Cooper holds assets – former customer accounts – of Westmoore, but paid no consideration for those assets.

23. Defendant never produced many key documents in discovery, despite being asked to do so. In particular, throughout the litigation of the FINRA Arbitration, Defendant wrongfully concealed CK Cooper's transaction with Westmoore. In all events, Defendant is liable for the fraud described in the SOC and this Complaint.[1]

24. On July 30, 2013, Defendant filed the instant Bankruptcy Petition. The $779,954 debt owed to Plaintiff by the Defendant has not been satisfied in any amount.

## FIRST CAUSE OF ACTION

### NON-DISCHARGEABILITY UNDER
### SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

25. Plaintiff incorporates herein by reference the allegations set forth above in their entirety.

26. Bankruptcy Code §523(a)(2)(A) provides, in relevant part, that: "(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt – (2) for money, . . . obtained by – (A) false pretenses, a false representation or actual fraud . . . ."

---

1    Notably, on December 17, 2010, Claimants Mike J. Fuller, *et al.* filed an Arbitration Statement of Claim at FINRA, Case No.: 10-05679. The *Fuller* FINRA matter was virtually identical to the *Hamels* FINRA matter. On April 3, 2013, FINRA issued an Award in the *Fuller* Plaintiffs' favor against Defendant ("Award"). The Award stated as follows:
> . . . After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

> 1.    [Defendant Turoci is] jointly and severally liable for and shall pay to [Plaintiffs] compensatory damages in the amount of $495,315.00, plus interest at the rate of 10% per annum from December 17, 2010 until the award is paid in full.

> 2.    [Defendant Turoci is] jointly and severally liable for and shall pay to [Plaintiffs'] attorneys' fees in the amount of $191,954.00, pursuant to the Westmoore contracts.

> 3.    [Defendant Turoci is] liable for and shall pay to [Plaintiffs] $375.00 as reimbursement for the non-refundable portion of the initial claim filing fee previously paid by [Plaintiffs] to FINRA.

The *Fuller* Award was confirmed by Judge Guilford of the United States District Court, Central District.

27.    All or part of the debt owed to Plaintiff is non-dischargeable as it is a debt for money that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code §523(a)(2)(A).

## SECOND CAUSE OF ACTION

### NON-DISCHARGEABILITY UNDER
### SECTION 523(a)(4) OF THE BANKRUPTCY CODE

28.    Plaintiff incorporates herein by reference the allegations set forth above in their entirety.

29.    Bankruptcy Code §523(a)(4) provides, in relevant part, that: "(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt – . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ."

30.    All or part of the debt owed to Plaintiff is non-dischargeable as it is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code §523(a)(6).

## THIRD CAUSE OF ACTION

### NON-DISCHARGEABILITY UNDER
### SECTION 523(a)(6) OF THE BANKRUPTCY CODE

31.    Plaintiff incorporates herein by reference the allegations set forth above in their entirety.

32.    Bankruptcy Code §523(a)(6) provides, in relevant part, that: "(b) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt – . . . (6) or willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."

///

33.   All or part of the debt owed to Plaintiff is non-dischargeable as it is a debt for willful and malicious injury caused by the Defendant within the meaning of Bankruptcy Code §523(a)(6).

## FOURTH CAUSE OF ACTION

### NON-DISCHARGEABILITY UNDER
### SECTION 523(a)(19) OF THE BANKRUPTCY CODE

34.   Plaintiff incorporates herein by reference the allegations set forth above in their entirety.

35.   Bankruptcy Code §523(a)(19) provides, in relevant part, that: "(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt – (19) that – (A) is for – (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and (B) results, before, on, or after the date on which the petition was filed, from – (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; (ii) any settlement agreement entered into by the debtor; or (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor."

36.   All or part of the debt owed to Plaintiff is non-dischargeable as it is a debt for money that was obtained through fraud, deceit, or manipulation in connection with the purchase or sale of a security within the meaning of Bankruptcy Code §523(a)(19).

/ / /

/ / /

/ / /

**FIFTH CAUSE OF ACTION**

**OBJECTION TO DEBTOR'S DISCHARGE UNDER
SECTION 727(a)(2)(A) OF THE BANKRUPTCY CODE**

37.     Plaintiff incorporates herein by reference the allegations set forth above in their entirety.

38.     Bankruptcy Code §§727(a)(2)(A) provides that: "(a) The court shall grant the debtor a discharge, unless – (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed – (A) property of the debtor, within one year before the date of the filing of the petition . . .."

39.     Plaintiff is informed and believes that Defendant, both personally and in his operation of his various businesses, including but not limited to C&K Capital Corporation and CK Cooper, Inc. (which was held jointly and severally liable for all damages in the Award), has transferred or concealed, or has permitted to be transferred or concealed property of the Defendant, within one year before the date of the filing of the petition.

40.     By virtue of the foregoing, the Defendant's discharge should be denied under Bankruptcy Code §727(a)(2)(A).

**SIXTH CAUSE OF ACTION**

**OBJECTION TO DEBTOR'S DISCHARGE UNDER
SECTION 727(a)(3) OF THE BANKRUPTCY CODE**

41.     Plaintiff incorporates herein by reference the allegations set forth above in their entirety.

42.     Bankruptcy Code §§727(a)(3) provides that: "(a) The court shall grant the debtor a discharge, unless . . . (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep

1  or preserve any recorded information, including books, documents, records, and papers, from

2  which the debtor's financial condition or business transactions might be ascertained, unless such

3  act or failure to act was justified under all of the circumstances of the case . . .."

4
5      43.    Plaintiff is informed and believes that Defendant, both personally and in his

6  operation of his various businesses, including but not limited to C&K Capital Corporation and CK

7  Cooper, Inc. (which was held jointly and severally liable for all damages in the Award), concealed,

8  destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

9  books, documents, records, and papers, from which the Defendant's financial condition or business

10  transactions might be ascertained.

11     44.    By virtue of the foregoing, the Defendant's discharge should be denied under

12  Bankruptcy Code §727(a)(3).

13
14                    **SEVENTH CAUSE OF ACTION**

15         **OBJECTION TO DEBTOR'S DISCHARGE UNDER
          SECTION 727(a)(4)(A) OF THE BANKRUPTCY CODE**

16
17     45.    Plaintiff incorporates herein by reference the allegations set forth above in their

18  entirety.

19     46.    Bankruptcy Code §727(a)(4)(A) provides that: "(a) The court shall grant the debtor

20  a discharge, unless – (4) the debtor knowingly and fraudulently, in or in connection with the case –

21  (A) made a false oath or account . . .."

22     47.    The debtor knowingly and fraudulently, in or in connection with the case, made a

23  false oath or account, in that he represented in the Statement of Financial Affairs attached to his

24  Petition that his assets and income were much less than they actually are.

25
26     48.    By virtue of the Defendant's false representations and omissions, and the oath he

27  took concerning the veracity of his submissions, the Defendant's discharge should be denied under

28  Bankruptcy Code §727(a)(4)(A).

# EIGHTH CAUSE OF ACTION

## OBJECTION TO DEBTOR'S DISCHARGE UNDER
## SECTION 727(a)(5) OF THE BANKRUPTCY CODE

49.    Plaintiff incorporates herein by reference the allegations set forth above in their entirety.

50.    Bankruptcy Code §727(a)(5) provides that: "(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

51.    The Defendant has failed to explain satisfactorily the deficiency of assets to meet the Defendant's liabilities.

52.    By virtue of the Defendant's false representations and omissions, and the oath he took concerning the veracity of his submissions, the Defendant's discharge should be denied under Bankruptcy Code §727(a)(5).

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment determining that the debt the Defendant owes Plaintiff is non-dischargeable under Bankruptcy Code §§523(a)(2)(A), 523(a)(4), 523(a)(6) and/or 523(a)(19) or, in the alternative, denying the Defendant's discharge under Bankruptcy Code §§727(a)(2)(A), 727(a)(3), 727(a)(4)(A) and/or 727(a)(5) and granting Plaintiff such other and further relief as this Court may deem just and proper.

DATED: October 22, 2013

BALDWIN LAW GROUP

By: _____
PATRICK BALDWIN, ESQ.
CHRISTOPHER P. MADER, ESQ.
*Attorneys for Plaintiff Cole Hamels, Individually and as Trustee of The Cole Hamels Living Trust U/A DTD 12/31/2006*

©2004 Charles Schwab & Co., Inc. All rights reserved. Member SIPC. CRS 22640 (0603-018) STP10332R1-07 (12/04)

# charlesSCHWAB
### INSTITUTIONAL

Schwab One® Trust Account

Account of  HAMELS

Custodial and brokerage services provided by Charles Schwab & Co., Inc. Member SIPC.

Statement Period: August 1, 2007 through August 31, 2007

Page 3 of 6

Account Number:

## Investment Detail (continued)

### Investment Holdings (continued)

| Description | Quote Symbol | Quantity Long/Short | Latest Price | Total Market Value |
|---|---|---|---|---|
| **Other** | | | | |
| MKA REAL EST OPPTY FD I  *£ ¶ | | 10.2848  L | $ 10,000 | $ 102,848.00 |
| LIMITED LIABILITY CO | | | | |
| SONATA MULTI MGR FUND LP  *£ B | | 100,959  L | 1 | 100,959.00 |
| PRIVATE PLACEMENT LP | | | | |
| ASSET HELD @ GENL PTNR | | | | |
| WESTMOORE LNDNG OPPTY FD  *£ ¶ | | 10.2731  L | 10.000 | 102,731.40 |
| LIMITED LIABILITY CO | | | | |
| **Total Market Value of Other** | | | | $ 306,538.40 |

| | | |
|---|---|---|
| **Total Account Value** | | $ 306,538.40 |

## Transaction Detail

### Investments Purchased and Sold

| Settle Date | Trade Date | Transaction | Description | Quote Symbol | Quantity | Unit Price | Purchase/Debit | Sales/Credit |
|---|---|---|---|---|---|---|---|---|
| **Other Activity** | | | | | | | | |
| 06/30 | 06/30 | Adjust Position | WESTMOORE LNDNG OPPTY FD | | 0.2731 | $ 10,000 | | |
| | | | LIMITED LIABILITY CO | | | | | |
| 07/31 | 07/31 | Received | SONATA MULTI MGR FUND LP | | 100,959 | 1 | | |
| | | | PRIVATE PLACEMENT LP | | | | | |

Please see "Footnotes for Your Account" section for an explanation of the footnote codes and symbols on this statement

REDACTED

©2007 Charles Schwab & Co., Inc. All rights reserved.  Member SIPC.  DTS 03045 (0603-018) STP10332R1-08 (03/07)

# charlesSCHWAB
## INSTITUTIONAL

Schwab One® Trust Account

Account of ██████ HAMEL ██████

Statement Period: August 1, 2008 through August 31, 2008
Page 3 of 8.
Account Number: ██████████

"Custodial and brokerage services provided by Charles Schwab & Co., Inc. Member SIPC."

## Investment Detail (continued)

### Investment Holdings (continued)

| Description Other | Quote Symbol | Quantity Long/Short | | Latest Price | Total Market Value |
|---|---|---|---|---|---|
| SONATA MULTI MGR FUND LP  Æ B PRIVATE PLACEMENT LP | | 94,440 | L | $ 1 | $ 94,440.00 |
| ASSET HELD @ GENL PTNR WESTMOORE INVESTMENT LP  Æ 1 PRIVATE PLACEMENT LP | | 105.9682 | L | 1,000 | 105,968.25 |
| ASSETS HELD @ GENL PTNR WESTMOORE LNDNG OPPTY FD  Æ 1 LIMITED LIABILITY CO | | 11.6665 | L | 10,000 | 116,665.20 |
| Total Market Value of Other | | | | | $317,073.45 |

## Transaction Detail

### Investments Purchased and Sold

| Settle Date | Trade Date | Transaction Description | Quote Symbol | Quantity | Unit Price | Purchase/Debit | Sales/Credit |
|---|---|---|---|---|---|---|---|
| 08/15 | 08/15 | Money Market Funds (Non-Sweep) Activity Reinvested Shares | | | | | |

Total Account Value

REDACTED

Please see "Footnotes for Your Account" section for an explanation of the footnote codes and symbols on this statement

©2007 Charles Schwab & Co., Inc. All rights reserved.  Member SIPC.  DTS 03045 (0603-018) STP10332R1-08 (03/07)

*charles*SCHWAB
INSTITUTIONAL

Schwab One® Trust Account

Account of COLE HAMELS TREE

Custodial and brokerage services provided by Charles Schwab & Co., Inc. Member SIPC.

Statement Period: August 1, 2008 through August 31, 2008
Page 2 of 8
Account Number

**Investment Detail**

**Cash and Money Market Funds (Sweep)**

| Description | Quote Symbol | Quantity Long/Short | Latest Price | Total Market Value |
|---|---|---|---|---|
| ███████ Money Market Funds (Sweep) | | | | |
| **Investment Holdings** | | | | |
| **Money Market Funds (Non-Sweep)** | | | | |
| ███████ Value of Money Market Funds (Non-Sweep) | | | | |
| **Equities** | | | | |
| CHINA TEL GROUP INC | CHTL | 5,000 | $1.7700 | $8,850.00 |
| **Total Market Value of Equities** | | | | |
| **Equity Funds** | | | | |
| **Total Market Value of Equity Funds** | | | | |

Please see "Footnotes for Your Account" section for an explanation of the footnote codes and symbols on this statement

REDACTED

*charles* SCHWAB
INSTITUTIONAL

Schwab One® Trust Account of
COLE HAMELS TTEE

Statement Period
September 1-30, 2010

Page 3 of 9



## Income Summary

| | This Period | | | Year to Date | |
| --- | --- | --- | --- | --- | --- |
| | Federally Tax-Exempt | Federally Taxable | Federally Tax-Exempt | Federally Taxable | |
| Money Funds Dividends | 0.00 | | 0.00 | | |
| Cash Dividends | | | 0.00 | | |

## Investment Detail - Money Market Funds [Sweep]

### Money Market Funds [Sweep]

| | Quantity | Market Price | Market Value | Current Yield | % of Account Assets |
| --- | --- | --- | --- | --- | --- |

## Investment Detail - Equities

### Equities

| | Quantity | Market Price | Market Value | % of Account Assets |
| --- | --- | --- | --- | --- |
| CHINA TEL GROUP INC SYMBOL: CHTL | 5,000.0000 | 0.1900 | 950.00 | <1% |
| GEROVA FINANCIAL GRP    F SYMBOL: GFC | 3,500.0000 | 5.4000 | 18,900.00 | 9% |
| ROCKWALL HOLDINGS INC SYMBOL: RKWL | 7,500.0000 | 0.0400 | 300.00 | <1% |

REDACTED

© 2008 Charles Schwab ... PC. Schwab Institutional is a division of Charles Schwab & Co., Inc ("Schwab") This statement is furnished solely for your account at Schwab ...

Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.

SIPC



# charles SCHWAB
INSTITUTIONAL

Schwab One® Trust Account of
COLE HAMELS TTEE

Account Number

Statement Period
September 1-30, 2010

## Investment Detail - Other Assets

| Other Assets | Quantity | Market Price | Market Value | % of Account Assets |
|---|---|---|---|---|
| SONATA MULTI MGR FUND LP $^{A,B}$ PRIVATE PLACEMENT LP ASSET HELD @ GEN. PTNR | 59,710.0000 | 1.0000 | 59,710.00 | 29% |

## Investment Detail - Unpriced Securities

| Unpriced Securities | Quantity | Market Price | Market Value | % of Account Assets |
|---|---|---|---|---|
| WESTMOORE INVESTMENT LP $^{A,P}$ * PENDING LITIGATION * | 105.9662 | N/A | N/A | |
| WESTMOORE LNDNG OPPTY FD $^{A,P}$ * PENDING LITIGATION * | 11.9593 | N/A | N/A | |

Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement. Member SIPC. Schwab Institutional is a division of Charles Schwab & Co., Inc. ("Schwab"). This statement is furnished solely for your account at Schwab.

*charles* SCHWAB
INSTITUTIONAL

Schwab One® Trust Account of
COLE HAMELS TEE

UST

Account Number

**Statement Period**
September 1-30, 2010

## Transaction Detail - Purchases & Sales

### Bond Funds Activity

| Settle Date | Trade Date | Transaction | Description | Quantity | Unit Price | Total Amount |
|---|---|---|---|---|---|---|
| 09/30/10 | 09/30/10 | Reinvested Shares | | | | |

## Transaction Detail - Dividends & Interest (including Money Market Fund dividends reinvested)

| Transaction Process Date | Activity | Description | | Credit/(Debit) |
|---|---|---|---|---|

## Transaction Detail - Transfers

| Settle Date | Trade Date | Transaction | Description | Quantity | Unit Price | Total Amount |
|---|---|---|---|---|---|---|
| 09/24/10 | 09/24/10 | Delivered | WLMG HOLDING INC: WHLX | (10,624.0000) | 14.0000 | (148,736.00) |
| 09/27/10 | 09/27/10 | Delivered | RINEON GROUP INC: RIGI | (6,563.0000) | 18.0000 | (118,134.00) |

Please see "Endnotes for Your Account" ... tion for an explanation of the endnote codes and symbols on this statement.

© 2008 Charles Schwab ... Member SIPC. Schwab Institutional is a division of Charles Schwab & Co., Inc. ("Schwab"). This statement is furnished solely for your account at Schwab.

REDACTED
Page 6 of 9

SIPC

# BALDWIN
### L A W   G R O U P

November 14, 2011

FINRA Dispute Resolution
1 Liberty Plaza
165 Broadway, 27th Floor
New York, NY 10006

Re: *Cole Hamels, Individually and as Trustee of the Cole Hamels Living Trust U/A DTD 12/31/2006 v. Westmoore Securities, Inc., Westmoore Trading Company, Westmoore Investment, LP, Westmoore Partners, Inc., Westmoore Management, LLC, Westmoore Capital Group LLC, Westmoore Capital Management, Inc., Westmoore LP, Westmoore Lending, LLC, Westmoore Realty, Inc., Martin Kelly Capital Management, SunTrust Investment Services, Inc., CK Cooper & Company, C&K Capital Corporation, Matthew R. Jennings, Robert Lee Jennings II, Steven R. Goodrich, Shawn Patrick Crawford, Michael J. Cornelius, Mark R. Molenaar, Robert V. Willison, Michael Seid, Christopher Turoci, Alexander G. Montano, Otilia Chen, Michael A. Abraham and Jason Sugarman*
FINRA Case No.: TBD

## STATEMENT OF CLAIM

Claimant Cole Hamels ("Claimant"), Individually and as Trustee of the Cole Hamels Living Trust U/A DTD 12/31/2006 ("Living Trust") files the within Statement of Claim against Respondents Westmoore Securities, Inc., *et al.* (collectively, "Respondents") as follows.

### I.
### INTRODUCTION

Claimant had a low risk tolerance and wanted safe, conservative investments for his Living Trust. Contrary to his instructions, Respondents bought speculative, illiquid, unregistered securities, which according to the SEC, were part of a Ponzi scheme. In its application for injunctive relief against the Westmoore Respondents and various control persons, the SEC characterized the investments as a "corporate shell" game. Respondents also failed to disclose material risks of the investments. Respondents exercised complete discretion over Claimant's account and Claimant was informed of the investments after the fact. Westmoore merged with Respondent CK Cooper, its successor, and transferred assets to CK Cooper in a fraudulent transaction designed to evade creditors. Claimant incurred at least $779,000 in damages and demands rescission, interest, attorneys fees, costs, and punitive damages.

### II.
### PARTIES

A.    **CLAIMANT**

Claimant Cole Hamels is a professional baseball player. He is not a sophisticated or experienced investor. He resides in Newton Square, Pennsylvania with his wife and son. Mr. Hamels is the Trustee of the Cole Hamels Living Trust U/A DTD 12/31/2006.

### B.    RESPONDENTS

#### 1.    WESTMOORE SECURITIES, INC.

Respondent Westmoore Securities, Inc. is a broker dealer located in Anaheim, California. Westmoore also sometimes operated under the name Westmoore Trading Company. Claimant is informed and believes that Westmoore Securities and Westmoore Trading are the same entity, that Westmoore Securities operates as Westmoore Trading, and that both operated under the direction and control of Respondents Matthew R. Jennings, Robert Lee Jennings II, Steven R. Goodrich, Shawn Patrick Crawford, Michael J. Cornelius and Mark R. Molenaar, and the other individual Respondents named herein.

Respondent Westmoore Investment, LP is a California Limited Liability Partnership and a principal owner and controlling party of Westmoore Securities. Westmoore Investment, LP holds 75% or more of the outstanding shares of Westmoore Securities. Westmoore Investment, LP's General Partner is Respondent Westmoore Partners, Inc.

Respondent Westmoore Management, LLC is a California Limited Liability Company owned, managed and controlled by Respondents Matthew Jennings, Robert Jennings and Mark Molenaar. Westmoore Management serves as the managing member for the Series of Limited Liability Companies named Westmoore Capital Group, LLC, also a Respondent herein. Westmoore Management provides administrative, operational, management and accounting functions for the Westmoore entities and sometimes conducts business as Westmoore Trading Company. Securities issued by Westmoore Management were offered and sold through Westmoore Trading Company.

Respondent Westmoore Capital Group, LLC, is a Delaware Limited Liability Company managed by Westmoore Management. Westmoore Capital is a "series" limited liability company that creates multiple series of limited liability companies to acquire, hold, manage and dispose of operating companies and other assets.

Respondent Westmoore Capital Management, Inc. is a suspended California corporation formed in 2006 to become an alternative asset manager and advisory firm. However, it is not clear whether Westmoore Capital Management conducted operations.

Respondent Westmoore LP is a control person of Respondent Westmoore Securities, Inc. Westmoore Lending, LLC is an entity affiliated with the other Westmoore entities. Respondent Westmoore Realty, Inc, is a licensed real estate broker owned, operated and controlled by the Jennings' Respondents and received commissions in connection with the real estate related securities sold through Westmoore Securities and Westmoore Trading referenced herein.

The Westmoore Respondents are referred to herein collectively as "Westmoore." Claimant alleges that due to the cross ownership and method of operation and funding of the Westmoore entities, for all practical purposes each was the alter ego of the other, there is no distinction in fact among them and any such purported distinction should be ignored.

2

### a. *Westmoore Securities, Inc. Control Persons & Agents*

Respondent Matthew R. Jennings is Vice-President, CFO and FINOP of Respondent Westmoore Securities and directs (or directed during the relevant time period herein) the management and policies of the Westmoore entities. He is also General Partner of Westmoore Investments and is a control person of both Westmoore Securities and Westmoore Investments. He also is the CEO of Westmoore Management, LLC, CEO of Westmoore Capital Management, Inc., President of Westmoore Partners, Inc., and CEO and director of Westmoore Capital, LLC.[1]

Respondent Robert Lee Jennings II is a control person of Westmoore Securities and a general partner of Westmoore Investments. Through Westmoore Investments he controlled Westmoore Securities and Westmoore Trading.

Respondent Steven R. Goodrich is the CEO, President, Chief Compliance Officer, and a control person of Westmoore Securities.

Respondent Shawn Patrick Crawford is a principal and control person of Westmoore Securities.

Respondent Michael J. Cornelius is the Sales Manager at Westmoore Securities and a control person thereof.

Respondent Mark R. Molenaar is co-founder, Chief Operating Officer, Executive Vice President, and a control person of Westmoore Capital. He is also the Secretary and Executive Vice President of Westmoore Management, LLC and a control person thereof.

Respondent Robert V. Willison is a control person of the Westmoore entities and Westmoore affiliated entity, third-party Gerova Financial, LLC.

Respondent Michael A. Abraham was registered with Westmoore Securities from April 2007 until February 2008. Mr. Abraham is also the Chief Financial Officer and a control person of MKA Capital Group Advisors LLC, issuer and promoter of one of the fraudulent investments, MKA Real Estate Opportunity Fund.

Respondent Jason Sugarman was registered with Westmoore Securities from April 2007 until February 2008. Mr. Sugarman, is also the President, Managing Member and control person of MKA Capital Group Advisors LLC, an issuer and promoter the MKA Real Estate Opportunity Fund, a fraudulent investment.

---

[1]    As officers, directors, owners and controlling parties of nearly all Westmoore entities, Respondent Matthew R. Jennings and his affiliates, including Steven R. Goodrich, CEO of Westmoore Securities, managed the Westmoore enterprise, including Westmoore Securities which marketed and sold the fraudulent offerings. Respondents Matthew R. Jennings, Robert Lee Jennings II, Steven R. Goodrich and other Respondents were involved in all aspects of operations of every Westmoore entity. They had authority over the various Westmoore entity bank accounts, including approving payments of principal and interest to investors and fund transfers.

Respondents Matthew R. Jennings, Robert Lee Jennings II, Shawn Patrick Crawford and Steven R. Goodrich all were registered and/or associated with Respondent CK Cooper before becoming registered with Westmoore. Respondents Michael J. Cornelius and Michael Seid were registered with Westmoore before becoming registered with CK Cooper when the two companies merged in February 2009. Several third-party Westmoore registered representatives, including but not limited to Donald C. George, Edward Salti, Athena Bradburn and Wayne Leffler, among others, became registered with CK Cooper after the two companies merged in February 2009.

3

2.    **MARTIN KELLY CAPITAL MANAGEMENT &
SUNTRUST INVESTMENT SERVICES, INC.**

Respondent Martin Kelly Capital Management ("MKCM") is an investment management firm located in San Diego, California. According to its Form ADV, MKCM has "arrangements that are material to its advisory business which includes [sic] CK Cooper . . .." MKCM was the investment manager and/or advisor for Claimant until February 2010. Claimant's accounts were handled at MKCM by third-party Billy Crafton.

Respondent SunTrust Investment Services, Inc. ("SunTrust") is a broker dealer located in Atlanta, Georgia. In February 2010, SunTrust acquired MKCM and Claimant's accounts were transferred to SunTrust pursuant to the acquisition.

*a.    Martin Kelly Capital Management Control Persons*

Respondent Michael Seid is the owner, principal and a control person of MKCM. Seid is a registered representative of CK Cooper, and was registered with Westmoore before becoming registered with CK Cooper. Seid was responsible for supervising the activities of the sales representatives of MKCM.

3.    **CK COOPER & CO., INC.**

Respondent CK Cooper & Company is a broker dealer in Irvine, California. Respondent C&K Capital Corporation is the parent corporation of CK Cooper & Company (collectively "CK Cooper"). CK Cooper offered and sold Westmoore investment products and thereafter, in or about January 2009, merged or combined with Westmoore. CK Cooper and its control persons are or may be in the possession of assets that were fraudulently or wrongfully transferred to it by Westmoore. CK Cooper and its control parties are the successors in interest and alter egos of Westmoore.

*a.    CK Cooper & Co., Inc. Control Persons*

Respondent Christopher Turoci is a managing member of CK Cooper, Respondent Alexander G. Montano is the CEO of CK Cooper, and Respondent Otilia Chen is the Chief Compliance and Operations Officer of CK Cooper. Each is a control person of CK Cooper.

In doing the things herein alleged, each of the Respondents was acting as the agent of the other Respondents. Each of Claimant's investments was solicited by Respondents.

**III.
BACKGROUND FACTS**

Beginning in 2007, the Westmoore Respondents were incurring losses from operations or the investments they had promoted, offered and sold. Respondent Matthew Jennings and his affiliates (other Respondents named herein) determined that the operations of the Westmoore Respondents were unsustainable, as they were not producing sufficient revenue to cover the high returns promised to investors.

4

The Westmoore Respondents determined that the only way to continue paying promised returns to existing investors was to raise new investor capital through false means and to use funds from new investors to pay old investors, a classic Ponzi Scheme.[2]

In furtherance of the Ponzi Scheme, the Westmoore Respondents raised money in 2008 through various offerings of equity, membership units, and promissory notes sold by Respondent Westmoore Securities, the captive broker dealer of Westmoore Trading. In total, as part of the scheme, Westmoore paid at least $8.7 million of new investor funds to existing investors in 2008. That is, $8.7 million from new investors was raised in new offerings with the representation that the funds would be invested in what were represented to be legitimate business operations but the funds were, in fact, diverted to pay previous investors who were falsely led to believe the funds represented dividends or returns on their investment.

At no time did Respondents disclose to investors that their funds were being diverted to pay earlier investors or that returns depended on Westmoore's receipt of funds from new investors to pay earlier investors. Westmoore entities and offerings were managed and operated without regard for the separate identities of the companies with the Westmoore group.

Investor funds from all sources were comingled and treated as fungible. Investor funds were routinely used for purposes not intended by the investors in order to perpetuate the Westmoore's Ponzi Scheme, pay unearned distributions to insiders, and fund investments in other companies. The same funds were transferred and re-transferred between numerous Westmoore entities.

Neither the registered representatives nor the offering materials disclosed to investors, including Claimant, that Westmoore intended to use new investor funds to pay existing investors and thus would not be used for the purposes represented to the investors, i.e., to promote the business plans of the investments. Although many of the Private Placement Memoranda ("PPMs") included a section entitled 'Risk Factors,' these disclosures had little or no value because of Westmoore's failure to disclose its scheme.

Consequently, the PPMs and related offering materials pursuant to which Respondents offered and sold the subject securities were materially false and misleading in that they misrepresented material facts and omitted material facts pertaining to the terms of the offerings including but not limited to the use of the funds, and that investments were kept afloat via improper inter-fund or inter-company transfers.

## A.   REGULATORY ACTION BY SEC

On June 15, 2010 the SEC applied *ex parte* in US District Court, Central District of California for a Temporary Restraining Order against Respondents Westmoore Management, LLC, Westmoore Investment, LP, Westmoore Capital Management, Inc., Westmoore Capital Group, LLC and Matthew Jennings, specifically seeking: (1) a freeze on the assets of Westmoore and Jennings; (2) the appointment of temporary Receiver; (3) the prohibition of the destruction of documents; and, (4) an accounting. On June 16, 2010 the US District Court granted the relief and the Westmoore Respondents' assets are now frozen by the District Court.

---

[2]    Westmoore was in continuous need of new investor funds to fund pre-existing obligations. Westmoore management directed that investor funds be used to meet pre-existing obligation and operating expenses by evading restrictions governing the use of the funds.

## B.    CLAIMANT'S INVESTMENTS

Respondents solicited the following investments in Claimant's Trust account:

| Investment | Principal Amount | Date |
|---|---|---|
| MKA Real Estate Opportunity Fund | $102,848 | March 26, 2007 |
| Westmoore Lending Opportunity Fund, LLC | $100,000 | May 30, 2007 |
| Sonata Multi-Manager Fund, LP | $100,959 | July 31, 2007 |
| ChinaTel Group ("CHTL") | $8,850 | August 26, 2008 |
| Westmoore Investment LP | $105,968 | August 26, 2008 |
| Westmoore Holdings ("WSMO") | $7,500 | August 29, 2008 |
| Rineon Group ("RIGI") | $205,093 | August 13, 2010 |
| WLMG Holdings ("WHLX") | $148,736 | August 31, 2010 |
| Total: | $779,954 | |

In addition to the fact that the funds invested by Claimant were not used for their represented purpose, the investments were inconsistent with Claimant's stated conservative investment objectives and low risk tolerance because they were speculative, illiquid private placements. Claimant is informed and believes that at the time the Trust made each investment, and undisclosed to him, the investment had either already failed or was failing. Thus, not only were the investments fraudulent in that they were used as part of the Ponzi Scheme but they were misrepresented, risky and unsuitable.

### 1.    MKA REAL ESTATE OPPORTUNITY FUND

Respondents solicited Claimant's Living Trust's investment in the MKA Real Estate Opportunity Fund ("MKA Fund") in March 2007. The MKA Fund is run by MKA Capital Group Advisors LLC ("MKA Capital Group") of Newport Beach, California. Respondent Sugarman was the President and Managing Member of the MKA Fund, MKA Capital Group and Respondent Abraham was the Chief Financial Officer of MKA Capital Group. Both were registered with Westmoore Securities from April 2007 to March 2008.

6

Ostensibly, the fund was created to make loans to real estate developers. Undisclosed to investors, including the Claimant, was that the fund was deeply troubled and that its managers used new investors' investments to cover losses suffered by prior investors. Desperate to keep the MKA Fund open, it appears that MKA Capital Group took the Claimant's March 2007 "investment" in the MKA Fund and gave it to the first investors to cover that group's losses. Even apart from the fraudulent use of Claimant's funds, the investment was inconsistent with the low risk, conservative investment objective of Claimant.[3]

### 2.    CHINATEL

Respondents solicited Claimant's investment in ChinaTel Group ("ChinaTel") in August 2008, a speculative, inappropriate investment.

ChinaTel recently disclosed as follows:

> Since our inception, we have incurred accumulated losses of $203,561,660. As of September 30, 2010, we had cash of $35,759 and current liabilities of approximately $9,775,147. Our auditors have expressed **substantial doubt** about our ability to continue as a **going concern** in their audit report, dated April 15, 2010, for the year ended December 31, 2009. In order to continue to operate our business, we will need to receive substantial amounts of additional capital. (emphasis added).

Moreover, according to its 10K filed with the SEC in 2010, ChinaTel's "success will depend largely on the expertise and reputation of George Alvarez, our Chairman of the Board and Chief Executive Officer . . . and Mario Alvarez, our Chief Operations Officer." On information and belief, George Alvarez and Mario Alvarez have been affiliated with Respondents Westmoore Securities, Inc., Matthew Jennings, Jason Sugarman, and third-parties MKA Capital Group Advisors LLC and, MKA Real Estate Opportunity Fund.[4]

The Alvarezes are defendants in several lawsuits:

- Los Angeles County Superior Court Case No. BC 274660 (2002), wherein the Complaint alleges repeated instances of embezzlement and kickbacks, and fraud and conspiracy to conceal the embezzlement by George Alvarez.

- Orange County Superior Court Case No. 07CC 11310 (2008), wherein the Complaint alleges fraud and forgery related to the illegal conveyance of millions of dollars of Plaintiff's assets, which George Alvarez subsequently used to secure deeds of trust on loans from MKA Capital Advisors.

---

[3]    In August 2008 the MKA Fund, MKA Capital Group, and Respondents Abraham and Sugarman were sued by lending firm Freestone Capital Partners LP. Abraham was ordered to pay Freestone $26.3 million, and Sugarman was ordered to pay Freestone $5.97 million. The MKA Fund has also been sued by at least three investors, the first being filed as early as the summer of 2008.

[4]    George Alvarez is believed to have been on the Board of Directors of Respondent Westmoore Securities, Inc.

- Orange County Superior Court Case No. 30-2008-00115855 (2008), wherein the Complaint alleges fraud and forgery related to the illegal conveyance of Plaintiff's assets, which George Alvarez subsequently used to secure deeds of trust on loans from MKA Capital Advisors.

- Orange County Superior Court Case No. 30-2008-00112284 (2008), wherein the Complaint concerns a judgment obtained against George Alvarez and Mario Alvarez in excess of $7,000,000. Plaintiff's expert witness report, prepared by Robert Cunnane (former FBI agent with the FBI's financial investigations unit) concluded that Westmoore and other Alvarez related entities conducted a check fraud/check kiting scheme.

- Orange County Superior Court Case No. 30-2008-00116368 (2008), wherein the Complaint concerns allegations by MKA Real Estate Opportunity Fund against George Alvarez and Mario Alvarez (consolidated with 10 other complaints) seeking damages in excess of $48 million.

- San Diego County Superior Court Case No. 37-2010-00087536 (2010), wherein the Complaint concerns a judgment obtained against Mario Alvarez. Alvarez thereafter allegedly transferred essentially all his assets to various friends and family members.

The foregoing and other material facts were never disclosed to Claimant.

### 3.    WESTMOORE INVESTMENTS

Respondents solicited Claimant's investment in: (1) the Westmoore Lending Opportunity Fund, LLC in May 2007 in the amount $100,000; (2) the Westmoore Investment LP in August 2008 in the amount $105,968; (3) Westmoore Holdings in or about August 2008 in the amount $7,500; and, (4) WLMG Holdings in or about August 2010 in the amount $148,736. Respondents also solicited the Claimant's investment in the Sonata Multi-Manager Fund, LP in 2007 in the amount of $100,959[5] and Rineon in August 2010 in the amount of $205,093.

Each of the above was promoted, offered, sold and operated by the Westmoore Respondents. Each investment was part of the Ponzi Scheme, and, the risks of were never disclosed to Claimant. Claimant believes he has lost the entire amount invested in each of the subject investments referred to herein.

In addition, Rineon Group, affiliated with Westmoore, was delisted shortly after Claimant's investment. In a periodic report filed at the SEC, Rineon disclosed that for the six months ended June 30, 2010, it "**has no cash on hand** . . . and the company currently does not have enough cash to satisfy its minimum cash requirements for the next twelve months." (*Emphasis added.*) In November 2010, Rineon filed a Form 15 with the SEC to deregister its common stock under the Securities Exchange Act of 1934 – Rineon's common stock was thereafter deleted from the OTC Bulletin Board. Thus, as of August 2010 when Claimant made his investment in Rineon, Rineon had **already** disclosed in a periodic report for the period ending June 2010 that it had "**no cash on hand to satisfy its minimum cash requirements** . . .." These facts were never disclosed to Claimant.

---

[5]     Claimant is informed and believes that the Sonata investment may be affiliated with the Westmoore Respondents. Claimant is not currently in possession of complete documentation and reserve the right to amend this Statement of Claim when such documentation is obtained.

**IV.**
**CLAIMS OF RELIEF**

**FIRST CLAIM OF RELIEF**
**Fraud**
**(Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder, 15 U.S.C. §78j(b); 17**
**C.F.R. 240.10b-5; and, FINRA Rule 2020)**

Claimant incorporates herein by reference the allegations set forth above in their entirety. Broker-dealers and registered representatives are required to disclose to their customers all material facts in connection with the offer or sale of investments or securities to their customers. (*See,* Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder, 15 U.S.C. §78j(b); 17 C.F.R. 240.10b-5)

In connection with the investment herein, Respondents affirmatively, knowingly and / or recklessly made untrue statements of material fact and affirmatively, knowingly and / or recklessly omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading.  The U.S. Supreme Court has held that under the federal securities laws, an omitted fact is deemed to be material if there is a substantial likelihood that, taking into account all of the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable investor. *Basic, Inc. v. Levinson,* 485 U.S. 224 (1988).

Respondents made material misrepresentations, and omitted to state material facts necessary to make the statements made not misleading, as set forth above.  Respondents had no basis for the statements made to Claimant.  Respondents knew or should have known of the true material facts alleged above.  Respondents intended that Claimant rely on said misrepresentations, misleading statements and omissions.    Claimant reasonably relied upon the statements made by Respondents.

Respondents' actions violated, among other common law and statutory authority, Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder, 15 U.S.C. §78j(b); 17 C.F.R. 240.10b-5; and FINRA Rule 2020, which bars deceptive and fraudulent practices in the connection with the sale or purchase of securities.  Claimant has been damaged by the conduct of Respondents, as set forth herein.

**SECOND CLAIM OF RELIEF**
**Suitability**

Claimant incorporates herein by reference the allegations set forth above in their entirety. Respondents negligently or recklessly failed to "know their customer" under NYSE Rule 405, and failed to ensure the transactions recommended by Respondents were suitable pursuant to NASD Rule 2310.  NASD Rule 2310 states:

(a)    In recommending to a customer the purchase sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

9

(b) Prior to the execution of a transaction recommended to a non-institutional customer, other than transactions with customers where investments are limited to money market mutual funds, a member shall make reasonable efforts to obtain information concerning:

(1)    the customer's financial status;
(2)    the customer's tax status;
(3)    the customer's investment objectives; and,
(4)    such other information used or considered to be reasonable by such member or registered representative in making recommendations to the customer.

NYSE Rule 405 states:

Every member organization is required through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to

(1)    Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

Respondents knew or should have known the transactions recommended by Respondents were unsuitable. Claimant has incurred damages as a result of Respondents' violation of NYSE Rule 405 and NASD Rule 2310, as set forth herein.

## THIRD CLAIM OF RELIEF
### Breach of Fiduciary Duty

Claimant incorporates herein by reference the allegations set forth above in their entirety. Respondents were fiduciaries to Claimant in that Respondents undertook a special relationship of trust and confidence in the offer and sales of securities to Claimant and by virtue of the fact that Claimant had an account with Respondents. Respondents took discretion in Claimant's account.

Respondents entered into a contractual relationship with the view of acting primarily for the benefit of Claimant and subordinating their interest to those of Claimant. As fiduciaries, Respondents owed Claimant an affirmative duty to act in the best interest of Claimant, and an affirmative duty of utmost good faith and fair dealing.

Respondents owed Claimant a duty to refrain from taking actions adverse to the interests of Claimant, and making any misleading statements or omitting to state any material facts relevant to any securities or transactions recommended by Respondents. By the activities set forth above, Respondents breached their fiduciary duties owed to Claimant, and Claimant has been damaged, as set forth herein.

## FOURTH CLAIM OF RELIEF
### Negligence

Claimant incorporates herein by reference the allegations set forth above in their entirety. Respondents owed Claimant a legal duty to exercise reasonable care. By virtue of the acts complained of above, Respondents breached their duty of reasonable care to Claimant and acted carelessly, negligently and /or recklessly so as to expose Claimant to an unreasonable risk of

10

harm. Respondents knew or in the exercise of reasonable care should have known their actions and omissions posed an unreasonable risk of harm of which Claimant was unaware. Respondents' failure to exercise reasonable care and breach of their respective duties owed to Claimant caused damage to Claimant, as set forth herein. Had Respondents exercised reasonable care, Claimant would not have been damaged.

### FIFTH CLAIM OF RELIEF
### Failure to Observe High Commercial Standards

Claimant incorporates herein by reference the allegations set forth above in their entirety. FINRA Rule 2010 requires members and registered representatives to observe high standards of commercial honor and just and equitable principles of trade. By their conduct herein, Respondents failed to observe the high standards of commercial honor required of them. Claimant has been damaged by the conduct of Respondents as set forth herein.

### SIXTH CLAIM OF RELIEF
### Breach of Contract

Claimant incorporates herein by reference the allegations set forth above in their entirety. By their actions as set forth herein above, the Respondents breached the agreements entered into by the parties. Further, FINRA rules are deemed incorporated into every FINRA member account agreement, and the sales practices described herein violate FINRA rules and thus Respondents breached the account agreement with Claimant. Claimant has incurred damages as a proximate result of Respondents' actions, as set forth herein.

### SEVENTH CLAIM OF RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing

Claimant incorporates herein by reference the allegations set forth above in their entirety. Claimant and Respondents entered into agreements concerning the investments described herein. Claimant fulfilled his obligations to Respondents under each agreement. In doing the things herein alleged, Respondents failed to act fairly and in good faith, and breached the Implied Covenant of Good Faith and Fair Dealing imposed upon the parties in each of the agreements. Claimant has been damaged by the conduct of Respondents, as set forth herein.

### EIGHTH CLAIM OF RELIEF
### Supervision
(Against Respondents Westmoore Securities, Inc., Westmoore Trading Company, CK Cooper & Company, Martin Kelly Capital Management, SunTrust and their control persons)

Claimant incorporates herein by reference the allegations set forth above in their entirety. As securities broker-dealers, Respondents Westmoore Securities, Inc., Westmoore Trading Company and CK Cooper & Company and their control persons are subject to the rules and regulations of the FINRA. Westmoore Securities, Inc., Westmoore Trading Company and CK Cooper & Company and their control persons were required under FINRA Rules to adequately supervise and monitor the conduct of the firm's representatives and agents in order "*to detect and prevent*" violations of securities laws. FINRA issued Notice to Members 99-45 as guidance for broker-dealer members, and to assist broker-dealer members in developing supervisory systems. Under the heading "Supervisory System and Written Procedures – Rule 3010(a) and (b)" it states:

....Each member must adopt and implement a supervisory system that is *tailored specifically to the member's business* and must address the activities of all its registered representatives and associated persons. *Supervisory procedures must be in writing* and *must be reasonably designed to achieve compliance* with applicable securities laws and rules and the rules of the NASD (hereinafter "securities laws"). *Ultimate responsibility for supervision rests with the member*. [Emphasis in original.]

Notice to Members 99-45 also states:

It is important that members . . . conduct inspections to determine whether the systems and procedures are being followed.  Paragraph (c) of the Rule, therefore, requires members to annually review the businesses they conduct, and sets forth the standard for this review. The mandatory annual review must be reasonably designed to assist members in detecting and preventing violations of the securities laws. The "reasonably" designed standard means, for example, that indications of problems, or "red flags," *must* be investigated.

Respondents Westmoore Securities, Inc., Westmoore Trading Company and CK Cooper & Company and their control persons were reckless in their failure to supervise their registered representatives and Claimant has been damaged by their failure.

### NINTH CLAIM FOR RELIEF
### Respondeat Superior Liability
(Against Each Entity Respondent)

Claimant incorporates herein by reference the allegations set forth above in their entirety.  All of the acts and omissions occurred while each Individual Respondent was acting on behalf of and as the agent of the Entity Respondents.  Each Entity Respondent is liable for the acts and omissions of its agents, and Claimant's damages.

### TENTH CLAIM FOR RELIEF
### Fraud and Fraudulent Transfer
(Against Westmoore Securities, Inc. Westmoore Trading Company, CK Cooper and its control persons)

Claimant incorporates herein by reference the allegations set forth above in their entirety. Claimant is informed and believes that assets belonging to Westmoore Securities and Westmoore Trading Company in the form of among other things customer accounts and earnings thereon were transferred to CK Cooper with knowledge that the accounts were the valuable property of Westmoore Securities and Westmoore Trading Company. Claimant is informed that no consideration was paid for the accounts, thus constituting a fraudulent transfer and a fraud on creditors and potential creditors, including Claimant.

### ELEVENTH CLAIM FOR RELIEF
### Conspiracy

Claimant incorporates herein by reference the allegations set forth above in their entirety. Respondents formed, operated and agreed to conspire to defraud its investors, including the Claimant. The wrongful conduct described herein was in furtherance of the conspiracy resulting

12

in the damages prayed for herein by Claimant. Regarding CK Copper and its principals, Claimant believes and therefore alleges that at the time of the merger between Westmoore and CK Cooper, CK Cooper and its control persons knew of the circumstances of the closure of Westmoore Securities and its affiliates and the accounts of Westmoore Securities were transferred without any or with inadequate consideration resulting in a fraudulent transfer or a fraud on the creditors and or potential creditors of Westmoore. This was accomplished with the knowledge of all parties involved in or effectuating the transfer of the accounts. Respondents CK Cooper and its control parties formed, operated and agreed to conspire to defraud Claimant. The wrongful conduct described herein was in furtherance of the conspiracy resulting in the damages prayed for herein by Claimant. At all times relevant Respondents knew of the wrongful activities and tortious scheme with knowledge of its unlawful purpose and intended to aid and did aid in its commission.

### TWELFTH CLAIM FOR RELIEF
#### Disgorgement
(CK Cooper and its control persons)

Claimant incorporates herein by reference the allegations set forth above in their entirety. Claimant demands that CK Cooper and its control persons disgorge all amounts made by them relating to the accounts transferred to it by Westmoore.

### V.
### PUNITIVE DAMAGES

This Panel has authority under FINRA rules to assess punitive damages and award attorneys' fees. The standard of conduct described as that which "shocks the conscience" is met here and the Panel should assess punitive damages against Respondents to deter similar conduct. FINRA Panels have assessed punitive damages against brokers who have consciously disregarded substantial financial risks to their unusually vulnerable customers, in some cases equal to approximately three times the compensatory damages awarded.

Punitive damages assessments issued by FINRA Panels are routinely upheld by courts.[6] Claimant respectfully submits that the activities described above more than meet the criteria warranting punitive damages.

### VI.
### PRAYER FOR RELIEF

WHEREFORE, Claimant requests that this Arbitration Panel award him damages in an amount to be proven at hearing, but not limited to:

1. Compensatory damages in an amount to be determined at hearing, but of at least $779,954;
2. Rescission of the investments described herein;
3. Consequential damages, including, but not limited to, lost investment opportunities and other harm resulting from Respondents' fraudulent and negligent acts;

---

[6]  *See, Castelein v. Bear Stearns, & Co., Inc.,* 2003 NASD Arb. LEXIS 123 (January 24, 2003) and *Coutee v. Barington Capital Group, L.P.,* 2002 NASD Arb. LEXIS 67 (Jan. 30, 2002); upheld by the Ninth Circuit at 336 F.3d 1128 (9th Cir. 2003).

13

4.  Prejudgment and post judgment interest at the legal rate from the date of the transactions herein until the date judgment is entered;

5.  Punitive damages in an amount to be determined at hearing;

6.  Reasonable and necessary attorneys fees, including costs and expenses;

7.  Such other and further relief as the Panel deems appropriate under the circumstances.

Claimant hereby demands a hearing on the issues set forth above, and respectfully request that the location of the hearing be set in Philadelphia, Pennsylvania.  Claimant is not currently in possession of complete documentation and reserves the right to amend this Statement of Claim when such documentation is obtained.

DATED:  November 14, 2011                    BALDWIN LAW GROUP


                                             By:   /s/ Christopher Mader
                                             PATRICK BALDWIN, ESQ.
                                             CHRISTOPHER P. MADER, ESQ.
                                             Attorneys for Claimant

14

FORM B104 (08/07)                                                    2007 USBC, Central District of California

**ORIGINAL**

## ADVERSARY PROCEEDING COVER SHEET
### (Instructions on Page 2)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Cole Hamels, Individually and as Trustee of the Cole Hamels Living Trust U/A DTD 12/31/2006 | Christopher J. Turoci |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Baldwin Law Group - Patrick Baldwin (SBN 93331) / Christopher Mader (SBN 199605); 530 Oak Grove Ave., No. 207, Menlo Park, CA 94025; (650) 326-8195; cmader@baldwinlawgroup.com | Douglas L. Weeks 1475 S. State College, No. 204 Anaheim, CA 92806 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin | ☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin |
| ☑ Creditor    ☐ Other | ☐ Creditor    ☐ Other |
| ☐ Trustee | ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to determine dischargeability / Objection to Discharge.  Bankruptcy Code Sections 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(5), 523(a)(2)(A), 523(a)(4), 523(a)(6) and 523(a)(19).

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**

☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud

☑ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny    [2]

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☑ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)

☑ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**

☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.

☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

RECEIVED
OCT 24 2013
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                Deputy Clerk

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 779,954.00 |

Other Relief Sought

FORM B104 (08/07), page 2                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>Christopher J. Turoci | BANKRUPTCY CASE NO.<br>13-BK-29197-BB |

| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISIONAL OFFICE<br>Los Angeles | NAME OF JUDGE<br>Sheri Bluebond |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE<br>10/22/13 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Christopher Mader, Esq. |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

ORIGINAL

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>BALDWIN LAW GROUP<br>Patrick Baldwin (SBN 93337) /<br>Christopher Mader (SBN 199605)<br>530 Oak Grove Avenue, Suite 207<br>Menlo Park, CA 94025<br>(650) 326-8195<br>(650) 326-0467 Fax<br>cmader@baldwinlawgroup.com<br><br><br><br>*Attorney for Plaintiff* | FOR COURT USE ONLY<br><br>RECEIVED<br>OCT 24 2013<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:                    Deputy Clerk |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION** ▾

| In re:<br><br>Christopher J. Turoci,<br><br><br><br><br>Debtor(s). | CASE NO.: 13-BK-29197-BB<br><br>CHAPTER: 7 ▾<br><br><br>ADVERSARY NUMBER: |
|---|---|
| Cole Hamels, Individually and as Trustee of the Cole Hamels Living Trust U/A DTD 12/31/2006<br><br><br>Plaintiff(s)<br>Versus<br><br>Christopher J. Turoci<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING  [LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date: _____ | Place: |
|---|---|
| Time: _____ | ☒ 255 East Temple Street, Los Angeles, CA 90012 |
| Courtroom: _____ | ☐ 3420 Twelfth Street, Riverside, CA 92501 |
| | ☐ 411 West Fourth Street, Santa Ana, CA 92701 |
| | ☐ 1415 State Street, Santa Barbara, CA 93101 |
| | ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2012                                  Page 1                    F 7004-1.SUMMONS.ADV.PROC

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status
conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate
with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least
14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR
form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.
REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a
unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the
status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court
may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          Page 2                        **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (**state method for each person or entity served**):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____          _____
*Date*                                  *Printed Name*                                 *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2012                                                   Page 3                          **F 7004-1.SUMMONS.ADV.PROC**